1
2
3
4
5
6
7
8
9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11
                       ----oo0oo----
12

13  ERIC W. RUND,
                                NO. CIV. S-05-00502 FCD GGH
14          Plaintiff,

15      v.                      MEMORANDUM AND ORDER

16  CHARTER COMMUNICATIONS, INC.,

17          Defendant.

18                     ----oo0oo----

19      This matter is before the court on a motion for summary

20  judgment, or alternatively, summary adjudication of issues

21  brought by defendant Charter Communications, Inc. ("defendant" or

22  "Charter") and a cross-motion for summary judgment brought by

23  plaintiff Eric Rund ("plaintiff").[1]  By its motion, defendant

24  seeks adjudication in its favor on plaintiff's complaint,

25  alleging claims for (1) physical disability discrimination in

26  violation of the Fair Employment and Housing Act ("FEHA");

27

28      [1]    Because oral argument will not be of material
    assistance, the court orders these matters submitted on the
    briefs.  E.D. Cal. L.R. 78-230(h).

(2) failure to accommodate a physical disability in violation of
FEHA; (3) retaliation in violation of FEHA; (4) wrongful
termination in violation of Labor Code § 132a; (5) breach of
contract; (6) intentional infliction of emotional distress;
(7) negligent infliction of emotional distress; and (8) negligent
supervision.  Plaintiff opposes defendant's motion and filed a
cross-motion for summary judgment in his favor on the issue of
physical disability discrimination in violation of FEHA.

For the reasons set forth below, the court GRANTS
defendant's motion and DENIES plaintiff's cross-motion.

**BACKGROUND**[2]

Plaintiff's employment with defendant began in 1998 when
defendant purchased Sonic Communications, plaintiff's employer at
that time.  (Pl.'s Separate Statement of Disputed Facts in Resp.
to Def.'s Statement of Uncontroverted Facts ("PRUF"), filed Feb.
7, 2007 [Docket #60], ¶ 1).[3]  Plaintiff worked at defendant's
Portola, California office, which is located in a wooded and
mountainous area in Northern California.  (PRUF ¶ 2).  The
Portola office is one of defendant's smaller offices, employing
approximately four to six employees at any given time.  (PRUF
¶¶ 3-4).

During his tenure working at Charter, plaintiff held both a
System Technician and System Technician I position.  (PRUF ¶ 7).

---

[2]   Unless otherwise noted, the following facts are
undisputed.

[3]   Defendant filed objections to the vast majority of
plaintiff's evidence submitted in opposition to defendant's
motion. (Docket #69).  The court does not, however, rule on said
objections herein because even considering all of plaintiff's
proffered evidence, it does not raise a triable issue of fact.

2

As a System Technician I, plaintiff's duties included installing cable sources, performing cable repairs, maintaining cable services, installing satellite dishes, and maintaining antennas amplifiers and microwave equipment. (PRUF ¶¶ 9-10). Approximately fifty percent of plaintiff's installation jobs and fifty percent of his service calls involved bending and maneuvering into "crawl spaces" averaging twenty inches by twenty inches. (PRUF ¶¶ 12-13). Plaintiff was also frequently required to climb ladders, bend or lay down, walk on uneven surfaces, and kneel. (PRUF ¶¶ 14-19).

Plaintiff took a leave of absence from Charter from May through October of 2003 to have knee replacement surgery. (Id. ¶¶ 21-22). Plaintiff needed the surgery because he suffered an injury in 1998 which caused the cartilage in his knee to dissipate over time. (Id. ¶ 23). Defendant granted plaintiff's request for a leave of absence and did not make negative or disparaging remarks about his injury or his need to take leave. (PRUF ¶ 25).

Plaintiff also filed for workers' compensation benefits around the time he requested a leave of absence. (PRUF ¶ 50). No one at Charter made negative statements or expressed dissatisfaction about plaintiff's filing for workers' compensation benefits. (PRUF ¶ 53).

Plaintiff returned to work on October 1, 2003. (PRUF ¶ 27). Plaintiff's supervisor, Ron Morton ("Morton"), welcomed him back to work following his leave of absence. (PRUF ¶ 26). Plaintiff submitted a note to defendant signed by his treating physician, Deane A. Stites, M.D., detailing certain work restrictions for

plaintiff, due to his medical condition, including "no climbing poles, no ladders, no prolonged kneeling or walking on uneven surfaces."[4]   (PRUF ¶¶ 27-28; Dep. of Eric Rund ("Rund Dep."), filed January 26, 2007, Ex. 10).

Plaintiff's position was modified to a "light duty" position because of plaintiff's medical condition.  (PRUF ¶ 31). Defendant provided plaintiff with an "Offer of Available Modified Work" which specified that his duties would include "[l]imited work with the following restrictions: no climbing poles or ladders, no prolonged kneeling or walking on uneven surfaces." (PRUF ¶ 32).  Morton selected specific jobs that plaintiff could complete considering his restrictions.  (PRUF ¶ 34).  The other employees in the Portola office shared responsibility for completing the tasks plaintiff could not complete.  (PRUF ¶ 33).

In January 2004, defendant received a Final Disability Evaluation completed by plaintiff's treating physician in which he concluded plaintiff's medical restrictions were permanent and stationary.  (PRUF ¶ 35; Morton Decl. in Supp. of Def.'s MSJ ("Morton Decl."), filed Jan. 26, 2007, Ex. C).[5]  Defendant

---

[4]   Plaintiff attempts to dispute this fact, citing Morton's deposition testimony that plaintiff would not have been fired if he could climb with hooks and grappling gear, plaintiff's deposition testimony that he did climb ladders within six weeks of returning to work, and plaintiff's declaration submitted on the motions, that he had no work restrictions.  None of this evidence disputes the fact that defendant received a note from plaintiff's treating physician informing defendant of plaintiff's medical restrictions.  Accordingly, the court treats the fact as undisputed.

[5]   Plaintiff tries to dispute this fact by offering evidence that his treating physician later removed plaintiff's work restrictions.  The fact that the restrictions were later

(continued...)

allowed plaintiff to continue working his "light duty" position after receiving this information about the permanent nature of his restrictions.  (PRUF ¶ 34).

On June 21, 2004, Robert Fickel ("Fickel"), Director of Human Resources at Charter, sent a letter to plaintiff stating that Charter could no longer allow plaintiff to work the "modified light duty" position.  (Rund Dep., Ex. 16).  Fickel requested that plaintiff suggest some reasonable accommodations which would allow him to perform the essential functions of his original position.  (Id.)  Fickel stated defendant would consider any reasonable accommodations which would not impose an "undue hardship on Charter."  (Id.)

A week later on June 28, 2004, plaintiff's treating physician indicated again that plaintiff had medical restrictions "as far as his squatting, kneeling, and lifting regarding his knee replacement."[6]  (PRUF ¶ 38; Rund Dep., Ex. 17).  The physician also indicated that these restrictions would "probably be on a permanent basis."  (PRUF ¶ 38; Rund Dep., Ex. 17).

On June 29, 2004, plaintiff responded to Fickel's letter. (Rund Dep., Ex. 18).  Plaintiff wrote, "As per our conversation, I am giving you accommodations that would allow me to more easily complete my duties."  (Id.)  Specifically, plaintiff requested a

---

[5](...continued)
removed in June 2005 does not put the fact that Charter received this information from plaintiff's physician in January 2004 in dispute.

[6]    Plaintiff claims this fact is in dispute; however, he provides no evidence that defendant did not receive this information from plaintiff's treating physician.

5

"bucket truck equipped with a CLI and power inverter." (<u>Id.</u>; PRUF ¶ 41). Plaintiff asserted the proposed accommodations would allow him to "reach areas when working overhead" and "CLI equipment would allow me to complete the CLI drive-out and complete the repairs more easily." (Rund Dep., Ex. 18). Plaintiff admitted that he could not kneel or squat for extended periods of time but claimed he had learned to "crawl" on his back to accomplish his duties. (<u>Id.</u>; PRUF ¶ 41).

Fickel responded to plaintiff's letter on September 8, 2004. (Rund Dep., Ex. 19). Fickel acknowledged that plaintiff requested a bucket truck with a CLI and power inverter and explained that Charter did not believe this was a reasonable accommodation. (<u>Id.</u>) Fickel stated that this accommodation would not allow plaintiff to complete his essential job functions because there were "locations that cannot be reached by bucket truck." (<u>Id.</u>) Further, Fickel stated, "[T]his would not address the aspects of your job that require you to climb, kneel and squat, and we do not know of any reasonable accommodation that would allow you to perform these functions." (<u>Id.</u>) Fickel explained that defendant needed someone that could complete all essential job functions; therefore, as of September 10, 2004, Fickel stated that plaintiff would be "removed from the payroll, and separated from employment." (Rund Dep., Ex. 19).

Prior to plaintiff's termination, defendant did not receive communication from plaintiff's treating physician lifting the

1  medical restrictions.[7]   (PRUF ¶ 37).

2      Plaintiff claims that his termination amounted to unlawful

3  physical disability discrimination in violation of FEHA and

4  public policy.  (Complaint for Damages ("Compl."), filed Mar. 11,

5  2005, ¶¶ 8, 29).   In addition, plaintiff claims defendant fired

6  him in retaliation "solely because he had a disability and filed

7  a workers' compensation claim."  (Id. ¶ 21).   Plaintiff further

8  alleges defendant breached an "oral contract of employment which

9  was modified and re-enforced by certain policies, practices,

10 assurances and other express and implied statements of Defendants

11 [sic]."  (Id. ¶ 34).   Plaintiff claims the oral contract provided

12 plaintiff "would be terminated only for cause."  (Id.)   Plaintiff

13 also contends the retaliation by defendant caused him severe

14 emotional distress.  (Id. ¶¶ 41, 46).   Additionally, plaintiff

15 asserts defendant knew or should have known that its employees

16 were engaging in unlawful behavior.  (Id. ¶ 49).   Finally,

17 plaintiff claims defendants failed to reasonably accommodate

18 plaintiff's needs based on his physical disability.  (Id. ¶ 62).

19                            **STANDARD**

20     The Federal Rules of Civil Procedure provide for summary

21 judgment where "the pleadings, depositions, answers to

22 interrogatories, and admissions on file, together with the

23 affidavits, if any, show that there is no genuine issue as to any

24 ───────────────────

25     [7]   Plaintiff disputes this fact and cites a note from his
   treating physician attached to the Decl. of Larry Baumbach in
26 Supp. of Opp'n to Def.'s MSJ ("Baumbach Decl."), filed Feb. 2,
   2007, Ex. A.   The attached note is dated June 2005 and is not
27 relevant to the information possessed by Charter at the time of
   plaintiff's dismissal in *September 2004*.   As such, the court
28 disregards this evidence and finds the instant fact undisputed.

material fact."  Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  See Nissan Fire & Marine, 210 F.3d at 1107.  Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

**A.   Physical Disability Discrimination in Violation of FEHA**

Plaintiff alleges in his complaint that defendant "engaged in a pattern and practice of unlawful physical disability discrimination in violation of FEHA." (Compl. ¶ 9).  Plaintiff asserts that a manager at Charter engaged in disability discrimination when the manager terminated plaintiff because he falsely believed plaintiff could not perform his job duties. (Id. ¶ 7).  Plaintiff claims defendant "violated FEHA by failing to adequately supervise, control, discipline and/or otherwise penalize the conduct, acts, and failures to act of Defendant's Manager." (Id. ¶ 13).  Plaintiff alleges he filed charges with the Department of Fair Employment and Housing ("DFEH") against defendant and received a Right-to-Sue Notice.  (Id. ¶ 16).

In evaluating disability discrimination claims under FEHA, California courts have adopted the three-step burden-shifting test established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[8]  See Yanowitz v. L'Oreal USA, Inc. 36 Cal. 4th 1028, 1042 (2005).  Thereunder, plaintiff must first establish a prima facie case of discrimination.  In doing so, plaintiff may produce indirect evidence that gives rise to an inference of discriminatory motive.  See Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).  Ultimately, plaintiff must show that he (1) suffered from a disability or was regarded as disabled; (2) was otherwise

---

[8]   Due to the similarity between federal and state discrimination laws, California courts follow federal precedent in applying FEHA.  Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 354 (2000).

qualified to do the job; and (3) suffered an adverse employment action because of [his] disability. <u>Diaz v. Federal Express Corp.</u>, 373 F. Supp. 2d 1034 (C.D. Cal. 2005).

Once plaintiff makes this initial showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>See</u> <u>EEOC v. Hacienda Hotel</u>, 881 F.2d 1504, 1514 (9th Cir. 1989). The ultimate burden of persuasion, however, remains with the plaintiff. <u>Texas Dep't. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

If the employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must demonstrate that the reason is a pretext for discrimination. The plaintiff may demonstrate pretext in one of two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Chuang v. Univ. of Calif. Davis, Board of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir. 2000). The factual inquiry regarding pretext requires a new level of specificity. <u>Burdine</u>, 450 U.S. at 255. Plaintiff must produce *specific* and *substantial* evidence that the defendant's reasons are really a pretext for discrimination. <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 661 (9th Cir. 2002).

To set forth a prima facie case of physical disability discrimination, first plaintiff must establish that he suffered from a disability or was regarded as disabled. From the outset, plaintiff pressed this case on the theory that he was disabled in

10

1   that he had medical restrictions which prevented him from
2   performing his essential job functions without an accommodation.
3   (Compl. ¶¶ 7, 21, 28, 62).  Indeed, plaintiff admits that,
4   following his knee surgery and return to work, his treating
5   physician recommended certain work restrictions, including no
6   climbing poles or ladders, kneeling or walking on uneven
7   surfaces, which restrictions his physician ultimately said would
8   likely be permanent.  (PRUF ¶ 28).[9]

9      However, in his cross-motion for summary judgment on this
10   issue, plaintiff raised a theory which was not set forth in his
11   complaint.  Plaintiff referred to a note from his treating
12   physician, Dr. Stites, dated June 13, 2005.  (Pl.'s Opp'n to
13   Def.'s MSJ ("Pl.'s Opp'n"), filed Feb. 7, 2007 [Docket #58], at
14   5).  The note states in relevant part, "[Mr. Rund] has been
15   totally released from my care concerning his right knee.  Mr.
16   Rund has no limitations with lifting, climbing ladders, driving
17   or walking on uneven surfaces."  (Id. at Ex. A).  Plaintiff
18   argues this note proves that plaintiff was not disabled and that
19   defendant's belief that plaintiff was disabled was erroneous.
20   (Id. at 6).  Plaintiff also made the following statement in his
21   declaration submitted on the motions: "I was physically able and
22   capable of performing all essential functions of my job without
23   accommodation."  Plaintiff asserts that the court should not
24   consider him disabled but "regarded as disabled" by defendant.
25   (Id.)

26
27       [9]   Plaintiff attempts to dispute this fact with the note
  from his treating physician dated June 2005.  That note has no
28   bearing on plaintiff's condition at the time of his termination
  in September 2004.

The theory plaintiff set forth in his cross-motion is contradictory to the theory asserted in his complaint and will not be considered by the court.  Even if the court construes plaintiff's assertion of a new theory as a motion to amend his complaint,[10] plaintiff has not shown "good cause" to amend the pleading under Federal Rule of Civil Procedure 16(b), as is required by the court's Pretrial Scheduling Order.  (Status (Pretrial Scheduling) Order, filed Oct. 26, 2006.)  Furthermore, even if such "good cause" could be demonstrated, in order to successfully amend the complaint, plaintiff would also have to show that leave to amend is warranted under Federal Rule of Civil Procedure 15(a) which states "leave [to amend] is to be freely given when justice so requires."

Plaintiff's theory that he was regarded as disabled, and not in fact disabled, clearly conflicts with statements made in his complaint.  Whether or not he was actually disabled during his employment at Charter is a fact that has not changed since his termination and could have been asserted in the complaint; therefore, the interests of justice do not require granting plaintiff leave to amend his complaint at this late stage in the proceedings.[11]  Accordingly, this court will consider only the allegations in plaintiff's complaint for the purpose of ruling on

---

[10]   See Apache Survival Coalition v. United States, 21 F.3d 895, 910 (9th Cir. 1994) (holding that when issues are raised in opposition to a motion for summary judgment which are outside the scope of the complaint, the court should construe the opposition as a motion to amend the pleadings).

[11]   Discovery has closed and the deadline for filing dispositive motions was February 27, 2007.  (Status (Pretrial Scheduling) Order, filed Oct. 26, 2006, at 3).

1  the instant motions.  As to the first element of plaintiff's
2  prima facie case, the court finds sufficient evidence that
3  plaintiff was disabled.

4      To prove the second element of a prima facie case, plaintiff
5  must establish that he was capable of performing his job
6  functions with or without an accommodation.  Again, plaintiff
7  admits that his treating physician recommended certain work
8  restrictions including no climbing poles or ladders, kneeling or
9  walking on uneven surfaces due to his medical condition.  (PRUF ¶
10  28).  Plaintiff also admits that climbing ladders, kneeling and
11  walking on uneven surfaces were essential job functions of his
12  System Technician I position at Charter.  (PRUF ¶ 20).
13  Plaintiff's job duties directly conflicted with his work
14  restrictions.  Plaintiff has not demonstrated that he provided
15  defendant with a note from his physician lifting those
16  restrictions *before* his termination.  Instead, plaintiff cites a
17  note from his physician dated June 2005 indicating plaintiff no
18  longer had medical restrictions.  (Baumbach Decl., Ex. A).
19  However, as discussed above, the note is not relevant to the
20  instant motion.  Plaintiff has not demonstrated that he could
21  complete his job duties with or without an accommodation *before*
22  he was terminated from his employment with defendant.

23      Finally, to demonstrate the third element of a prima facie
24  case, plaintiff must establish that he suffered an adverse
25  employment action because of his disability.  The fact that
26  plaintiff suffered an adverse employment action is not in
27  dispute.  Both parties admit that plaintiff was terminated. (PRUF
28  ¶ 48).  Plaintiff, however, proffers no evidence that his

termination was *because of* his claimed disability.  As plaintiff
cannot establish all of the requisite elements of a prima facie
case, the court must grant summary judgment in favor of
defendant.

Notwithstanding the above, even if plaintiff could establish
a prima facie case, defendant has provided legitimate, non-
discriminatory reasons for its actions.  Defendant proffers
evidence that it terminated plaintiff's employment because
plaintiff could not perform his essential job functions with or
without a reasonable accommodation.  (Def.'s MSJ at 8).  Per
plaintiff's treating physician, plaintiff could not perform the
essential job functions without an accommodation, and the only
accommodations suggested by plaintiff were use of a bucket truck
and crawling on his back in lieu of kneeling.  (PRUF ¶ 41).
Defendant determined that use of a bucket truck was unreasonable
because one could not be assigned to plaintiff exclusively, and
there were many areas in the territory that were so heavily
wooded they could not be reached via the bucket truck.[12]  (PRUF
¶¶ 44, 47).  Additionally, defendant concluded that plaintiff
crawling on his back instead of kneeling was not a reasonable
accommodation because of his prior back injury and because of
safety issues.  (Morton Decl. ¶ 10).

_____

[12]    Plaintiff asserts that Morton testified in his
deposition that a bucket truck was available to plaintiff.
Morton testified that the Portola office had a bucket truck which
was normally used by another employee.  (Deposition of Ron Morton
("Morton Dep."), at 57).  Furthermore, plaintiff admitted in his
deposition that there was not a safe bucket truck available for
use on a regular basis.  (Rund Dep., Volume 1, page 101).
Plaintiff admitted that he expected Charter to purchase a bucket
truck or obtain one from another system.  (Id.)

Because defendant has met its burden with respect to the reasons for terminating plaintiff, the burden shifts to plaintiff to demonstrate the proffered reasons are pretextual.  However, plaintiff has provided no evidence to support a conclusion that defendant's legitimate non-discriminatory reasons are pretextual. Plaintiff contends defendant mistakenly believed plaintiff could not perform his job functions.  However, defendant's belief was based on information provided to it by *plaintiff* and *plaintiff's* treating physician.  Plaintiff never told defendant that his medical restrictions had been lifted.  In fact, plaintiff engaged in communications with defendant regarding potential accommodations for his claimed medical restrictions.  Plaintiff's bald assertions that defendant's beliefs about his disability were mistaken do not refute defendant's legitimate, non-discriminatory reasons for its actions.

Plaintiff also points to statements made by Morton to support his allegation of pretext. (Pl.'s Opp'n at 8).  Morton was asked during his deposition, "Would it be a fair statement that, if Mr. Rund could climb with hooks and grappling gear, that he would still be employed with Charter?"  Morton responded, "Yes, uh-huh."  (Morton Dep. at 64).  Climbing poles with hooks and grappling gear is not listed as an essential job function of the System Technician I position.  (Rund Dep., Ex. 3).  Plaintiff alleges Morton's statement supports a conclusion that plaintiff was fired solely because he could not perform a task that was not essential to his position.  Morton was plaintiff's supervisor but plaintiff has provided no evidence that Morton had any influence over employment decisions at Charter.  On the contrary, all of

the communication regarding plaintiff's termination was from Fickel, Director of Human Resources.  Morton's statement regarding the reasons for plaintiff's termination is essentially conjecture and is not substantiated by admissible evidence.

As plaintiff cannot establish a prima facie case of discrimination or even if he could, he has proffered no evidence that defendant's stated reasons for his termination are pretextual, defendant's motion for summary judgment as to this claim is GRANTED.  Accordingly, plaintiff's cross-motion for summary judgment is DENIED.

**B.   Failure to Accommodate a Physical Disability in Violation of FEHA**

Plaintiff alleged in his complaint that from June 2003 until September 2004, defendant did not reasonably accommodate plaintiff's needs based on his physical disability.  (Compl. ¶ 62).  Plaintiff claims defendant knew of his knee injury and did not provide reasonable accommodations that were necessary because plaintiff could no longer climb telephone poles with hooks.  (Id. ¶¶ 60-62).  Plaintiff states he was "willing and able to perform the duties and functions of his position if such reasonable accommodation had been made by Defendant."  (Id. ¶ 63).

Plaintiff contends that defendant did not engage in an interactive process with plaintiff to assess a reasonable accommodation.  (Pl.'s Opp'n, at 9).  Plaintiff maintains that had defendant done so, defendant would have "learned that the treating physician had released [him] from all limitations and that its termination of Plaintiff was based on inaccurate,

16

outdated information that could easily have been updated[.]"
(Id.)

In <u>Humphrey v. Memorial Hospitals Association</u>, the Ninth
Circuit discussed what is required in the interactive process
between an employee and employer when the employee cannot perform
his job functions without an accommodation.  239 F.3d 1128 (9th
Cir. 2001).  "The interactive process requires communication and
good-faith exploration of possible accommodations between
employers and individual employees, and neither side can delay or
obstruct the process."  <u>Id.</u> at 1137.  In <u>Humphrey</u>, the
accommodation the employer and employee previously agreed upon
was not effective.  <u>Id.</u> at 1138.  The employer was aware of a
different accommodation which would likely be effective and
failed to suggest or discuss this accommodation with the
employee.  <u>Id.</u>  Instead, the employee was terminated.  <u>Id.</u> at
1138-39.  The court held the employer failed to engage in the
interactive process.  <u>Id.</u> at 1139.  The court explained: "Given
[the employer's] failure to engage in an adequate interactive
process, liability is appropriate if a reasonable accommodation
without undue hardship to the employer would otherwise have been
possible."  <u>Id.</u>

<u>Humphrey</u> is distinguishable from the instant case because
defendant did engage in an interactive process with plaintiff and
because there was no reasonable accommodation available.  Here,
defendant contacted plaintiff on June 21, 2004 to request
potential reasonable accommodations which would enable plaintiff
to perform his duties.  (Rund Dep., Ex. 16).  Plaintiff responded
with two suggestions, a bucket truck and permission to crawl on

17

his back.  (Rund Dep., Ex. 18).  Defendant considered both of
these suggestions and determined that neither of them would allow
plaintiff to complete all of his essential job functions.
(Morton Decl. ¶¶ 9-10).  The Portola area was heavily wooded such
that a bucket truck would not assist plaintiff in reaching all
locations.  (PRUF ¶ 2).  Additionally, plaintiff's position was
manual in nature and necessitated physical activity such as
kneeling, squatting, and climbing ladders.  (PRUF ¶ 20).
Defendant determined that plaintiff's suggestion of crawling on
his back would not allow him to complete his duties, especially
in light of his previous back injury.  (Morton Decl. ¶ 10).
Defendant concluded that due to the small number of employees in
the Portola office, it would be an undue burden to reassign
someone to all the unreachable locations or maintain a "light
duty" position for plaintiff. (Morton Decl. ¶ 8).

Defendant engaged plaintiff in communication regarding
potential accommodations for his medical restrictions and did so
in good faith.  Neither plaintiff nor defendant was aware of a
reasonable accommodation which would not be an undue hardship on
defendant but would allow plaintiff to complete his job duties.
The fact that neither plaintiff nor defendant could determine a
reasonable accommodation for plaintiff's particular restrictions
does not indicate a breakdown of the interactive process which
can be attributed specifically to defendant. (See Allen v.
Pacific Bell, 212 F. Supp. 2d 1180, 1197 (C.D. Cal. 2002)
(holding there was no reasonable accommodation available for a
technician with medical restrictions which limited him to a desk
job, the employer took all necessary and reasonable steps to

18

1    accommodate the technician, and therefore, the employer was not

2    liable for failure to engage in the interactive process).

3        Plaintiff claims a proper interactive process would have

4    resulted in defendant learning that plaintiff no longer had

5    medical restrictions. (Pl's Opp'n at 9). Plaintiff also had a

6    duty to participate in the interactive process in good faith.

7    Humphrey, 239 F.3d at 1137. Plaintiff had a duty to accurately

8    represent to defendant his medical restrictions and to work with

9    his employer to determine a reasonable accommodation. Plaintiff

10   had an opportunity to respond to defendant's request for

11   reasonable accommodations. At that time, he could have informed

12   defendant that he had no medical restrictions if, in fact, that

13   was the case. Instead, plaintiff wrote to defendant to suggest

14   accommodations. Defendant received no communication from

15   plaintiff or plaintiff's treating physician at any point during

16   this process to indicate that plaintiff's restrictions had been

17   lifted. Furthermore, plaintiff's contention that his medical

18   restrictions had been removed prior to this interactive process

19   lacks supporting evidence. As discussed above, the note from

20   plaintiff's treating physician dated June 2005 sheds no light on

21   his condition from June through September of 2004, the time frame

22   in which the communication regarding a reasonable accommodation

23   occurred. Plaintiff has brought forth no evidence that defendant

24   did not engage in the interactive process or that defendant

25   engaged in the interactive process in bad faith.

26       Defendant's motion is therefore GRANTED with respect to this

27   claim.

28

                                    19

**C.   Retaliation in Violation of FEHA**

Plaintiff alleges that defendant violated California Government Code § 12940 by retaliating against him because he had a physical disability and because he filed a workers' compensation claim.  (Compl. ¶ 21).  Plaintiff filed a Charge of Discrimination with the DFEH alleging retaliation.  (Compl. ¶ 24).

FEHA makes it unlawful for an employer to discriminate against any of its employees because he has filed a complaint for violations arising under FEHA.  Cal. Gov't Code § 12940(h) (West 2006).  To establish a case of retaliation, plaintiff must prove (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two.  Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987) (citing Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 784 (9th Cir. 1986)).  Under McDonnell Douglas, once plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for the adverse action.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).  However, "[o]nly the burden of production shifts; the ultimate burden of persuasion remains with the plaintiff."  Yartzoff, 809 F.2d at 1376 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  If defendant can make this showing, the burden shifts back to the plaintiff to show that the alleged explanation is a pretext for impermissible retaliation.  Yartzoff, 809 F.2d at 1377.

Defendant asserts plaintiff cannot set forth a prima facie case of discrimination. (Def.'s MSJ at 11). Defendant claims that the actions plaintiff mentions in his complaint, filing a workers' compensation claim and having a disability, are not "protected activities" under FEHA. (<u>Id.</u>) Furthermore, defendant notes that there was an approximately fifteen to sixteen month lapse in time between plaintiff filing a workers' compensation claim and defendant terminating his employment. (<u>Id.</u> at 12). Defendant asserts that this lapse in time demonstrates that there was no causal connection between the two events. (<u>Id.</u>)

Defendant cites no legal authority nor has the court found any, to support the contention that filing a workers' compensation claim is not a protected activity under FEHA.[13] As such, the court will not dismiss this claim on the ground that plaintiff did not engage in a "protected activity."

Nevertheless, summary judgment is properly granted in favor of defendant as plaintiff has no evidence of a causal connection between his "protected activity" and his termination. Plaintiff may support his allegation of causation with either direct evidence or circumstantial evidence. "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir. 1987). Plaintiff filed a workers'

---

[13] Clearly, "having a disability" is not a protected *activity* for purposes of a retaliation claim under FEHA.

21

1  compensation claim when he took his leave of absence from Charter
2  in May 2003. (PRUF ¶ 50). Upon returning from his leave of
3  absence, plaintiff was reinstated at Charter to his former
4  position on a "light duty" basis. (PRUF ¶ 31). Plaintiff admits
5  that he was welcomed back to Charter by his supervisor upon his
6  return to work. (PRUF ¶ 26). Plaintiff continued to work a
7  "light duty" position for ten months from October 2003 until
8  September 2004.[14] (PRUF ¶ 39). Approximately sixteen months
9  elapsed from the time plaintiff filed his workers' compensation
10 claim until defendant terminated plaintiff's employment.
11 Furthermore, in June 2004, plaintiff's treating physician
12 indicated that his medical restrictions would likely be
13 permanent. (Id. ¶ 38). In light of the lengthy lapse of time
14 between the filing of the workers' compensation claim and
15 plaintiff's termination, coupled with defendant's discovery of
16 the permanent nature of plaintiff's injury three months before
17 the termination, the court finds a lack of circumstantial
18 evidence to support a finding of causation. Plaintiff has
19 offered no other evidence to support his claim of retaliation.
20      Defendant's motion as to this claim must be GRANTED.
21 **D.   Wrongful Termination in Violation of Public Policy**
22      Plaintiff claims his termination was in violation of public
23 policy as set forth in California Labor Code § 132a. (Compl.
24 ¶ 6). Section 132a of the California Labor Code makes it
25 unlawful for an employer to discriminate against an employee for
26 filing a workers' compensation claim. Defendant argues that the

27 _____

28      [14]  Plaintiff disputes this fact but gives no explanation
     or basis for his contentions.

22

1  California Workers' Compensation Act ("WCA") provides the
2  exclusive remedy for workplace injures; and therefore, the claim
3  must be dismissed.  (Def.'s MSJ at 12).

4       Plaintiff cites <u>City of Moorpark v. Superior Court</u>, 18 Cal.
5  4th 1143 (1998) to support his argument that the WCA is not the
6  exclusive remedy for this type of claim.  (Pl.'s Resp. at 8-9).
7  In <u>Moorpark</u>, the California Supreme Court explained that Section
8  132a was not an exclusive remedy for a plaintiff bringing a cause
9  of action for disability discrimination.  <u>Moorpark</u>, 18 Cal. 4th
10 at 1154.  However, for claims brought under Section 132a, "the
11 Workers Compensation Appeals Board [is] the exclusive forum...."
12 <u>Id.</u> at 1156.  Consequently, plaintiff may bring claims outside of
13 Section 132a which are related to his allegation of disability
14 discrimination, but a claim under Section 132a is only allowable
15 before the Workers Compensation Appeals Board.  <u>See</u> <u>Greenly v.</u>
16 <u>SaraLee Corp.</u>, 2006 U.S. Dist. LEXIS 90868, *30 (D. Cal. 2006)

17      Furthermore, even if plaintiff's claim could be properly
18 brought before this court, similar to plaintiff's claim for
19 retaliation under FEHA, plaintiff cannot establish a causal link
20 between the filing of the workers' compensation claim and his
21 termination.

22      For these reasons, defendant's motion for summary judgment
23 as to plaintiff's claim for wrongful termination in violation of
24 Section 132a is GRANTED.

25 **E.   Breach of Contract**

26      In his complaint, plaintiff alleges he entered into an oral
27 employment contract with defendant.  (Compl. ¶ 34).
28 Specifically, plaintiff asserts that "it was implicitly agreed

that Plaintiff would not be impeded in his job duties and would be terminated only for cause." (Id.)  Plaintiff alleged defendant breached the terms of the contract when it terminated plaintiff.  (Id. ¶ 35).

Defendant moves for summary judgment as to this claim, arguing plaintiff was an at-will employee at Charter.  (Def.'s MSJ, at 13).  To support its argument, defendant provides an Employee Acknowledgment Form signed by plaintiff on January 7, 1999.  (Rund Dep., Ex. 2).  The form states, "I [plaintiff] acknowledge that this Employee Handbook is neither a contract of employment nor a legal document, and that I have an employment-at-will relationship with Charter Communications." (Id.) Further, defendant cites to plaintiff's deposition testimony wherein he admits no one at Charter made representations that his employment was not at-will.  (Def.'s MSJ, at 14).

Plaintiff's opposition to defendant's motion did not address this claim.  As plaintiff has provided no evidence of the existence of an oral contract between plaintiff and defendant, and defendant's evidence establishes the contrary, defendant's motion for summary judgment on this issue is GRANTED.

**F.    Intentional and Negligent Infliction of Emotional Distress**

In his complaint, plaintiff alleges that defendant's failure to protect plaintiff from retaliation and the offensive conduct of a Charter employee[15] was outrageous conduct done "with the intent to cause, or with reckless disregard for the probability

---

[15]    In plaintiff's complaint, he repeatedly refers to a "Manager" at Charter but does not ever identify the "Manager" by name.  The court assumes plaintiff is referring to Fickel.

of causing Plaintiff to suffer from severe emotional distress."
(Compl. ¶¶ 40, 45-46).  Plaintiff claims this failure to act
damaged plaintiff's "interests and well-being."  (Id. ¶ 40)
Likewise, plaintiff also alleges defendant's conduct amounts to
negligent infliction of emotional distress.  (Id. ¶ 44-47).

The California Workers' Compensation Act provides the
exclusive remedy for employee injuries sustained under the normal
conditions of employment.  Cal. Lab. Code § 3601.  Where an
employee's injury falls within the protection of the Workers'
Compensation scheme, as laid out in Labor Code § 3600, the Code
precludes a cause of action against the employer.  Id.

In Cole v. Fair Oaks Fire Protection District, 43 Cal. 3d
148, 160 (1987), the California Supreme Court warned that
exceptions to the exclusive remedy provision risk undermining the
legislative compromise of the Workers' Compensation Act by
permitting the employee to pursue a cause of action merely by
tailoring the claim to fall within the scope of an exception.
Id. at 160.  With respect specifically to emotional injuries, the
doctrine therefore requires that such injuries fall within the
exclusive remedy provision of Section 3601 unless the basic
conditions of Section 3600 are not met and the employer's conduct
contravenes fundamental public policy or exceeds the risks
inherent in the employment relationship.  Livitsanos v. Superior
Court, 2 Cal. 4th 744, 815 (1992).

In that regard, the California Supreme Court has held that a
claim alleging violation of FEHA falls outside the scope of Labor
Code §§ 3600 and 3601.  City of Moorpark v. Superior Court, 18
Cal. 4th 1143, 1148 (1998).  Correspondingly, courts have found

that emotional injuries arising from discrimination and
harassment are by nature outside the scope of the employment
relationship and thus are not precluded by the exclusive remedy
provisions of the Workers' Compensation Act.  Taylor v. Beth Eden
Baptist Church, 294 F. Supp. 2d 1074, 1080 (N.D. Cal. 2003)
(citing Yanowitz v. L'Oreal USA, Inc., 131 Cal. Rptr. 2d 575
(2003) (holding that exclusivity did not apply to claim for
negligent infliction of emotional distress against employer based
on allegation that employer had retaliated against plaintiff for
refusing to fire female sales associate who plaintiff's
supervisor thought was unattractive); Fretland v. County of
Humboldt, 69 Cal. App. 4th 1478, 1491-92 (1999) (holding that
work-related injury discrimination is not a normal risk of the
compensation bargain and therefore, claims for negligent and
intentional infliction of emotional distress against employer
were not barred by exclusivity rule); Accardi v. Superior Court,
17 Cal. App. 4th 341 (1993)(holding that claim for intentional
infliction of emotional distress against employer based on
alleged harassment was not barred by the exclusivity rule because
sexual harassment was "outside the normal employment
environment")).

     Here, however, plaintiff has not established any such
discrimination, retaliation or harassment claims and thus, the
instant claims for intentional and negligent infliction of
emotional distress must likewise be dismissed because they are
barred by the Workers' Compensation Act.  Defendant's motion is
GRANTED as to these claims.

**G.   Negligent Supervision**

Plaintiff alleges defendant knew or should have known that its employee (plaintiff's "Manager") was engaging in unlawful behavior. (Compl. ¶ 49). Plaintiff also asserts that defendant knew or should have known its employee's behavior would cause plaintiff emotional distress. (Id. ¶ 51). Further, plaintiff claims defendant had the authority to regulate its employee's conduct and failed to do so. (Id. ¶¶ 54-55). Plaintiff alleges defendant's failure to act had the effect of "ratifying, encouraging, condoning, exacerbating, increasing, and/or worsening said conduct, acts, and failures to act." (Id. ¶ 56). Plaintiff asserts that defendant's conduct caused plaintiff pain and suffering, extreme and severe mental anguish and emotional distress. (Id. ¶ 58).

As set forth above, plaintiff has proffered no evidence of wrongdoing or unlawful behavior by defendant or its employees, and therefore defendant's motion is GRANTED on this claim.[16]

<strong>CONCLUSION</strong>

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in its entirety and plaintiff's cross-motion for partial summary judgment is DENIED. The Clerk of the Court

///

///

///

---

[16]   Because summary judgment has been granted with respect to all the claims set forth in the complaint, the court need not separately address defendant's motion with respect to plaintiff's claim for punitive damages. As plaintiff has no viable substantive claim against defendant, he has no claim for any damages against defendant.

1   is directed to close this file.

2        IT IS SO ORDERED.

3   DATED: March 20, 2007

4

5

6                                        _____
                                         FRANK C. DAMRELL, JR.
7                                        UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28